**2016 BNH 016** **Note: This is an unreported opinion. Refer to LBR 1050-1 regarding citation.**

---

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re: Bk. No. 15-11877-BAH
Chapter 7

Brian J. Brazil,
Debtor

Dee P. Genetti,
Plaintiff

v. Adv. No. 16-1024-BAH

Brian J. Brazil,
Defendant

*Sean P. Kelly, Esq.*
*Sean P. Kelly Law Group, LLC*
*Woburn, MA*
*Attorney for the Plaintiff*

*Charles B. Moegelin, Esq.*
*Novick & Moegelin*
*Lowell, MA*
*Attorney for the Defendant*

## MEMORANDUM OPINION

## I. INTRODUCTION

The matter before the Court is the complaint filed by the plaintiff Dee P. Genetti ("Genetti") against the defendant Brian J. Brazil (the "Debtor"). Genetti seeks a determination that a debt owed to her by the Debtor is excepted from discharge pursuant 11 U.S.C. § 523(a)(2)(A).[1] On April 12, 2017, the Court entered partial summary judgment in favor of Genetti, concluding that the undisputed facts established all the elements of 11 U.S.C. § 523(a)(2)(A) other than intent to deceive. The Court conducted a trial on the Debtor's intent to deceive on July 11, 2017, at which Genetti and the Debtor testified, and seven exhibits were

---

[1] The Debtor withdrew her claims under 11 U.S.C. § 523(a)(4), (a)(6), and § 727(a)(2). See Doc. Nos. 70, 77.

admitted into evidence. For the reasons set forth below, the Court will enter judgment in favor of Genetti.

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and U.S. District Court for the District of New Hampshire Local Rule 77.4(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## III. FACTS

Genetti resides in Wilmington, Massachusetts. She is legally blind and suffers from paraplegia, muscle spasms, and rheumatoid arthritis, and requires the use of a wheelchair. In light of these conditions, her doctor recommended she obtain an accessible hydrotherapy tub.

The Debtor is a licensed plumber in Massachusetts doing business as B. Brazil Plumbing and Heating. Genetti first contacted him regarding the installation of an accessible hydrotherapy tub in June 14, 2011, after receiving his phone number from a handyman association. The Debtor was one of four contractors Genetti interviewed. Genetti testified that she ultimately hired the Debtor because a friend had a positive experience working with him, and the Debtor represented that he had installed five hydrotherapy tubs in the past.

Genetti and the Debtor met on or about June 23, 2011. From their discussions, the Debtor prepared an invoice memorializing the scope of the work to be performed and the cost (the "Invoice").[2] The Invoice provides, in relevant part:

---

[2] Exhibit 1.

| **Description** | **Supplies/Parts** | **Amount** |
|---|---|---|
| Stock This includes tub and valve | wood for floor, blue board for walls | $6,175.00 |
| Labor 10hrs | | $1,000.00 |
| | | |
| | | |
| New tile Tile is include in price | | |
| Removing old tub | | |
| Installing new tub | | |
| Replacing floor if needed, fixing up walls if needed | | |
| New shower valve w/ hand held | | |
| | | |
| | Subtotal | $7,175.00 |
| | Shipping | $$0.00 |
| | Tax Rate | 3.00% |
| | Total Tax | $215.25 |
| | Discount | |
| | TOTAL | $7,390.25 |

It is undisputed that at the time the Invoice was prepared, the parties had yet to select the hydrotherapy tub to be installed.

On or about August 11, 2011, the parties agreed on a hydrotherapy tub from Envy Walk-In Tubs (the "Envy Tub"). The parties offered differing testimony regarding how the Envy Tub came to be selected. Genetti testified that the Debtor proposed the Envy Tub, while the Debtor claimed that Genetti referred him to Envy's website. The Debtor's position on this point is particularly notable because he admitted that he proposed the Envy Tub in his answer to the complaint,[3] at summary judgment,[4] and in the parties' stipulation of facts in their Final Pretrial

[3] See Complaint, Doc. No. 1 at ¶ 16; Answer, Doc. No. 9 at ¶ 6.

[4] See Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment, Doc. No. 34 at ¶ 8; Defendant's Response to Plaintiff's Statement of Material Facts Filed in Support of Plaintiff's Motion for Summary Judgment, Doc. No. 62 at ¶ 8 (disputing that the Debtor picked the Envy Tub but without a supporting citation to the record as required by LBR 7056-1(b)(1)(B)).

Statement.[5] Even had this not been an established fact, however, the Court finds that the Debtor's testimony was incredible. At trial, Genetti explained that, due to her blindness, she relies on a computer that reads webpages to her and a machine that magnifies computer screens up to 300%. She credibly testified that this setup is, at best, awkward and does not allow her to see pictures. As a result, Genetti testified that she generally does not conduct internet searches. Moreover, the Court finds credible her testimony that she was unable to effectively view the Envy website once the Debtor referred her to it, and that she relied on his experience as a licensed plumber to select an appropriate hydrotherapy tub based upon their prior discussions.

On August 18, 2011, the Debtor requested Genetti pay him $3,500 to cover the cost of the Envy Tub so that he could place the order. Genetti gave him the funds on August 31, 2011, which were deposited in his bank account on September 14, 2011. On September 29, 2011, the Debtor represented to Genetti that he would be placing the order for the Envy Tub "on Monday," presumably meaning October 2, 2011.

Expecting that the Envy Tub would be delivered soon, Genetti initially waited to hear from the Debtor. When it did not arrive, she attempted to contact him by phone and email to no avail for months. Genetti finally heard from the Debtor on December 17, 2011, at which time he informed her that the Envy Tub would be delivered on January 4, 2012, and that he would install it on January 9, 2012. The Envy Tub, however, did not ship until February 8, 2012, and did not arrive at Genetti's home until February 15, 2012.

In the Final Pretrial Statement, the parties stipulated that the Envy Tub was not ordered until January 6, 2012.[6] At trial, Genetti testified, without objection, that she was so informed by the manufacturer. Notwithstanding their stipulation, the Debtor insisted at trial that he ordered

[5] See Final Pretrial Statement, Doc. No. 61 at ¶ 8.

[6] See Final Pretrial Statement, Doc. No. 61 at ¶ 12.

the Envy Tub promptly, and that the delay was due to the manufacturer. He testified that he "probably" received emails, letters, and faxes from the manufacturer, but could not produce them for trial. Again, the Court finds the Debtor's testimony at odds with the established facts and otherwise incredible.

Installation of the Envy Tub began on February 15, 2012. The Debtor met the shippers at Genetti's home that morning and immediately brought it into the bathroom. She testified that she was unable to see what was going on, and asked to see the Envy Tub, but that the Debtor told her that she would need to wait until the job was finished. Although the job was expected to take a single day, work was not completed on February 15, 2012. Before leaving, the Debtor informed Genetti that he would return the following day to complete the installation.

On the same date, though it is unclear when, the Debtor presented Genetti with a final billing invoice, reflecting the total agreed price of $7,390.25, her payment of $3,500.00, a $2,000.00 discount in light of the delay, leaving a balance of $1,890.25 (the "Final Invoice").[7] The Final Invoice further indicates that $1,000.00 would be due on that date, with the final $890.25 due upon completion. Genetti paid the Debtor $1,050.00 on that date.

As promised, the Debtor returned to work on February 16, 2012, but again left before the installation was complete, explaining that his daughter was sick and that he would return the following day. Before leaving, however, he requested that Genetti tender the final payment of $840.25, explaining that he needed the money for his daughter. Genetti acceded to his request and paid the final amount, but the Debtor did not return.

At the time the Debtor left, it appeared that the Envy Tub had been installed, with the Debtor having made representations to Genetti that the plumbing and electrical work were "all

[7] Exhibit 3.

set."[8] The wall around the Envy Tub, which had been demolished to accommodate its increased size over the prior tub, remained in disrepair. Additionally, large holes were left in the floor, and no tile work was done. Most notably, however, the Envy Tub, though installed, was not wheelchair accessible despite Genetti's express requirement.[9]

Throughout March, 2012, Genetti attempted to contact the Debtor to compel him to return and complete the job. On April 23, 2012, finally responded, indicating that one of his subcontractors would complete the tile work.

On May 17, 2012, Genetti contacted the Town of Wilmington's Building Inspector Department. Paul Raffi, the Plumbing and Gas Inspector, came to Genetti's home and discovered a plethora of serious issues beyond the obvious unfinished work. The Debtor had not obtained the required electrical and plumbing permits prior to beginning work, and neither the plumbing nor the electrical work complied with Massachusetts law.[10] In fact, the Envy Tub was left powered by twenty-five foot extension cord hanging from the basement ceiling and was not properly grounded. Moreover, the Envy Tub itself was not approved or certified by the Board of State Examiners of Plumbers and Gas Fitters, meaning that it could not be legally installed in Massachusetts.[11] Upon inspection, Raffi contacted the Debtor directly and secured his agreement to return and address these issues. Raffi later filed a complaint against the Debtor with Massachusetts Division of Professional Licensure's Office of Investigations, resulting in a $300.00 fine.

At trial, the Debtor did not dispute that he failed to obtain the necessary permits, or explain why he failed to do so beyond stating that he is not a licensed electrician and therefore,

---

[8] See Final Pretrial Statement, Doc. No. 61 at ¶ 18.

[9] Id. at ¶ 17.

[10] Id. at ¶¶ 17-18, 22.

[11] Id. at ¶ 23.

could not obtain an electrical permit. He testified that he was unaware that the Envy Tub was not appropriately certified, explaining that the manufacturer's website claimed that it was licensed for New Hampshire and Massachusetts. Curiously, the Debtor further testified, albeit incredibly, that Genetti was aware that the Envy Tub was powered by an extension cord and told him that was acceptable. He offered no explanation for why he left the job unfinished or why he repeatedly failed to respond to Genetti's inquiries.

After discussing the matter with Raffi, the Debtor obtained a plumbing permit in May, 2012, and an electrical permit in August, 2012. He returned to Genetti's home in August, 2012, to continue work. Whatever work was done at that time was not completed to Genetti's satisfaction and she fired him. Genetti later paid another contractor $17,630.00 to install a properly certified accessible hydrotherapy tub.[12] Genetti filed suit against the Debtor in the Massachusetts Small Claims Session of the Lowell District Court, and ultimately obtained a judgment in the amount of $21,517.08 on January 21, 2014.[13]

## IV. DISCUSSION

Section 523(a)(2)(A) of the Bankruptcy Code exempts from discharge any debt "for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by—false pretenses, a false representation, or actual fraud. . . ." 11 U.S.C. § 523(a)(2)(A). To establish that a debt is nondischargeable under this subsection, a creditor must show that:

> 1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied

[12] Exhibit 6.

[13] Exhibit 7.

> upon the misrepresentation, 5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage.

McCrory v. Spigel (In re Spigel), 260 F.3d 27, 32 (1st Cir. 2001) (citing Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997)) (footnote omitted); see Levasseur v. Old Republic Nat'l Title Ins. Co. (In re Levasseur), 737 F.3d 814, 818 (1st Cir. 2013); Sharfarz v. Goguen (In re Goguen), 691 F.3d 62, 66 (1st Cir. 2012). The party contesting dischargeability must prove each element by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991).

"A false representation can include a statement of future intention, such as a promise to act, but a promise to act is only a false representation if at the time the debtor made the promise he had no intention of performing." Sega Auto Sales, Inc. v. Flores (In re Flores), 535 B.R. 468, 482 (Bankr. D. Mass. 2015) (citing Palmacci, 121 F.3d at 786-787). A subsequent change of heart or intervening events will not render a sincere promise to act a false representation. Palmacci, 121 F.3d at 787. The second element requires "intent to deceive, manipulate, or defraud," which may be met by establishing that the debtor knows or believes the representation is false, or that the representation was made recklessly. Id. Fraud may be inferred as a matter of fact from the totality of the circumstances. Id. at 789.

At the April 12, 2017 hearing on Genetti's motion for summary judgment, the Court previously found that that the Debtor represented to her, either falsely or with reckless disregard for the truth, that he would install an accessible hydrotherapy tub sufficient for her needs and compliant with Massachusetts law. The Court concluded that this representation was at least in reckless disregard for the truth because the undisputed facts regarding the Debtor's approach to the job—selecting and ordering an uncertified tub, ignoring Genetti's efforts to contact him for months, installing a tub that was clearly not wheelchair accessible, performing unpermitted electrical and plumbing work, performing subpar work, and inexplicably walking off the job—

demonstrate a pattern of indifference stemming from when Genetti tendered the first payment. Additionally, the Court found that the Debtor induced Genetti to pay him $1,890.25 on the assurance that the work would be completed on February 16, 2012, when in reality he either knew or should have known that the work was neither permitted nor completed in accordance with applicable building regulations. The parties have now also stipulated that the Envy Tub was in fact ordered on January 6, 2012, despite the Debtor's representation that he would, and did, order it shortly after receiving $3,500 from Genetti. Moreover, the parties stipulated that the Debtor represented to Genetti on February 16, 2012, that the plumbing and electrical work were "all set," even though he knew that neither were permitted and should have known that at least the electrical work was not done to code or even safe.

All these statements were clearly made with the intent to extract payments from Genetti, and she, justifiably relying on his stated experience installing hydrotherapy tubs, made payments to him totaling $5,390.25. These payments, of course, only represent one component of her injury, as the Debtor's indisputably unworkmanlike installation of the Envy Tub required remediation by other professionals at a substantial cost. Thus, the only question that remains is the Debtor's intent.

Under the totality of the circumstances, the trial record amply supports the conclusion that the Debtor made these misrepresentations with the intent to deceive Genetti. Generally, the Court finds that the Debtor's testimony was not credible in most respects, and was often inconsistent with stipulated facts. Although the Debtor attempted to portray himself as an honest contractor that, due to circumstances beyond his control, was unable to finish a contract he sincerely intended to complete, the facts simply do not support such a characterization. Notably, the Debtor offered no explanation for why he ignored Genetti's many attempts to contact him, or

why he effectively abandoned the job on February 16, 2012. There was also no explanation for why he failed to obtain the required permits prior to starting work, or how he intended to complete the work without an electrician's license. The Court also finds it significant that the Debtor would not allow Genetti to see the Envy Tub when it was brought in, as it would have been immediately apparent that it was not wheelchair accessible. Instead, he proceeded to install it, knowing that was not the correct tub, and collected an additional $1,890.25 from Genetti. In sum, the Court finds the Debtor's pattern of conduct from the inception of their contract evidences an extreme indifference to the truth which the Court construes as intent to defraud. Accordingly, Genetti has sustained her burden and is entitled to judgment.

**V. CONCLUSION**

For the reasons articulated above, the Court will enter judgment in favor of Genetti with respect to Count I of her complaint. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Dated: October 2, 2017

/s/ Bruce A. Harwood
Bruce A. Harwood
Chief Bankruptcy Judge